## Fix's Executor v. Cook.

(Decided October 7, 1921.)

### Appeal from Trimble Circuit Court.

1. Appeal and Error—Instructions.—In a common law action if the court in two separate instructions submits two issues to the jury and one of them was erroneously submitted, it is not prejudicial to the losing party if it is apparent that the verdict was based on the properly submitted issue.

2. Executors and Administrators—Limitation of Actions.—If the statute of limitations has begun to run against one in his lifetime his death does not suspend the running of the statute in the absence of a statutory provision; and where the statute had begun to run before the death of one in 1908, the fact that his nominated executor did not qualify until 1919, after the statutory period had expired, did not authorize him under the provisions of section 2526, Kentucky Statutes, to bring his action within one year from his qualification.

3.   Executors and Administrators—Qualification.—Section 2526 ap-
plies only to the qualification of personal representatives before
the expiration of the original limitation period.

EUGENE MOSELY, RICHARD P. DIETZMAN and CHARLES
CARROLL for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

This suit was filed by appellant as executor of H. P.
Fix, deceased, on the 24th of July, 1919, on a lost note for
$1,115.65, alleged to have been executed in the year 1905
and payable one year thereafter.

The answer denied the execution of any such note in
the year 1905, but alleged that the defendant had exe-
cuted a note for about that amount dated in the year 1901,
payable one year thereafter, and then relied upon the fif-
teen-year statute of limitations in bar.

By an amended answer the further defense was inter-
posed that the note in question was a renewal of a note
for $600.00, executed by defendant and two others to H.
P. Fix in the year 1880, and that the first note and some
renewals thereof had borne interest at the rate of ten per
cent, and that upon the renewal of the note in 1901 that
rate of interest had been counted and embraced in the re-
newal note.   It further alleged certain payments on the
original note and previous renewal notes, but gave no
amounts or dates of these alleged payments, and there
was a general allegation that there was sufficient usury
embraced in the last renewal note to overpay the same.

Both of these allegations in the answer were denied
and the parties went to trial on them.

The court gave only two instructions.   In the first he
directed the jury to find for the plaintiff the amount of
the note with interest from 1905 unless they should be-
lieve the note described in the evidence was executed and
delivered to H. P. Fix in October, 1901, in which event
they were to find for the defendant.   The second directed
the jury that if they found for the plaintiff and further
believed that the note sued on contained any interest in
excess of six per cent per annum, they should deduct such
excess and find a verdict for the balance, if any.

The only witness for the defendant on the issue of
usury was the defendant himself, and accepting as part

of his evidence an avowal made by his counsel, it is to the effect that in 1880 he and two others executed to H. P. Fix a note for six hundred dollars, which ran for several years, with small payments thereon; that the note bore ten per cent per annum interest and that after several years the interest was counted thereon at that rate and the credits being insufficient to pay the interest a new note at the same rate was executed and was renewed a second time under the same circumstances; that the other two obligors in the note had died and that they and this defendant had paid in cash and bills for threshing wheat and sales of wheat and corn, several hundred dollars on these notes, but he could not give the exact amount, and that the entire principal of the note executed in 1901 was made up of usurious interest. The above was the substance of the avowal made by counsel, and later in his evidence, defendant stated that he was unable to say how much usury, if any, was contained in the note renewed in 1901.

It is perfectly clear that the verdict returned for the defendant could not have been based upon the second instruction; there is no evidence of the amount of any of the alleged payments or of the dates on which they were made, and, consequently, there was no basis upon which a calculation could have been made fixing the amount of usury paid or carried into the renewal notes, or determining whether the amounts so paid had extinguished the debt at the rate of six per cent.

It is therefore apparent that the verdict was based upon the belief of the jury that the note was executed in 1901, payable in one year, and was therefore barred by the statute of limitations. This evidence furnished no reason for giving the usury instruction, but it was not prejudicial to appellant for the reasons stated.

The evidence is very conflicting as to the time of the execution of the note, and while the court might have, as an original question, reached a different conclusion under the evidence, we feel bound by the verdict of the jury, who were the triers of the facts, knew the witnesses and were confronted by them.

After the conclusion of the whole evidence the plaintiff asked the court to peremptorily instruct the jury to find for him, which motion the court overruled and this is earnestly complained of as error because it is said that, under the provisions of section 2526, Kentucky Statutes, the running of limitation was suspended, and that the

executor had one year after his qualification in which to institute this action, whichever was the correct date of the note.

The petition alleges that H. P. Fix made and executed his will in the year 1905 and died in the year 1908, and that his will was probated in 1913, but that his nominated executor, appellant herein, did not qualify until July 17, 1919, and these allegations all stand admitted.

Section 2526 is as follows:

"If a person entitled to bring any action mentioned in the third article of this chapter, dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, the action thereon may be brought by his representative after the expiration of that time, if commenced within one year after his qualification."

It is earnestly argued that under the language of that section the executor had one year from the time of his qualification on the 17th of July, 1919, within which this suit might be brought, and that although the note was dated in 1901, and, consequently, under ordinary conditions barred fifteen years after it became due in 1902, that the fact the executor did not qualify until July, 1919, suspended the running of the statute and extended the period in which the suit might be brought to one year thereafter.

When H. P. Fix died in 1908 the limitation had been running several years against him, and, for some reason not explained in the record, his will was not probated for about five years after his death; nor is it explained in the record how it happened that his nominated executor did not actually qualify until six years after the will was probated, and yet we must accept these undenied allegations as true and pass upon the question presented without any explanation of them.

The statute was running at the date of the decedent's death in 1908, but the period of limitation had not expired; it was likewise running at the date of the probate of the will in 1913, but had not yet expired, but it had expired at the date of the qualification of the executor, unless the provision quoted extends that right to one year beyond that date, even though the executor had failed to qualify, as he might have done, for nine years before the limitation period expired.

The nominated executor was the son of the decedent and a beneficiary under the will, and there were other

adult children and beneficiaries under his will all during the years from 1908 to 1919, and the direct question is presented whether the executor and the other beneficiaries of the decedent may, without explanation, voluntarily and by their own neglect or incompetence indefinitely postpone the period of limitation either by the failure or the refusal of the nominated executor to qualify or by the failure of the other beneficiaries to have some one qualify in his place.

According to the undenied allegation, for more than eleven years there was no administration upon the estate of this decedent, although we gather from the record that he left a very considerable estate.

Appellant relies confidently upon the opinion of this court in Halcomb v. Cornett, 146 Ky. 339, construing the section of the statute involved. In that case the administrator declined to sue and the action was brought by the heirs of Stamper against Halcomb on a note dated March 6, 1891. The suit was filed in February, 1907, and the plea of limitation was interposed. It appeared that there had been no administration upon the estate of Stamper until two years after his death, and the plaintiffs sought to avoid the plea of limitation, claiming that the statute was suspended during that two-year period under the provisions of section 2526. In that case, as in this, the holder of the note died before the expiration of the limitation period, but in that case, while there was no administration for two years after his death, the personal representative did qualify five years before the expiration of the period of limitation and the court declined to deduct from the period of limitation the two years which had intervened from the death of Stamper up to the date of the qualification. In summing up its reasons, the court said:

"The words in the section that 'an action thereon may be brought by his representative after the expiration of that time if commenced within one year after his qualification' meant that if the personal representative does not bring his suit within the time allowed by the statute —in this case fifteen years—he must bring it in one year after he qualifies. In other words, the creditor has always fifteen years in a case like this to bring his suit, but if he dies within the fifteen years, his personal representative may bring the action within one year after he qualifies, although this may be beyond the fifteen years.

He must, however, in every case either sue within the fifteen years from the time the cause of action accrued or sue within one year after he qualifies. This being so, it follows that when he qualifies more than a year before the expiration of the fifteen years he has only the fifteen years to bring the suit. To illustrate, if in a case like this, the creditor dies fourteen years and nine months after the cause of action accrues, and the administrator then qualifies, he has one year from his qualification to file suit; but, if the creditor dies ten years after the cause of action accrued, and the administrator then or at any time longer than one year before the fifteen years expires qualifies, he must sue within fifteen years from the time the cause of action accrued.''

The essential distinction between that case and this is that there the personal representative actually qualified five years before the period of limitation expired and the court held that there had been no suspension of the running of the statute because he had not qualified for two years after the death of Stamper, while in this case the nominated executor failed to qualify for eleven years after the death of Fix and six years after the probate of his will, and about two years after the period of limitation expired, and neither he nor any of the beneficiaries under that will took any steps looking to his qualification, or that of any other person, until after the period of limitation had expired.

In Halcomb v. Cornett, when the court said, ''the creditor has always fifteen years in a case like this to bring his suit, but if he die within the fifteen years his personal representative may bring the action within one year after he qualifies, although this may be beyond the fifteen years,'' it had in mind a case like the one it was dealing with, that is, where the qualification of the personal representative had taken place before the limitation period had expired. That is apparent from the following part of the opinion, wherein it is said that if the personal representative qualifies more than a year before the expiration of the limitation period he must bring the suit within the original period, but if he qualifies at any time within one year of the expiration of the limitation period he has one year from his qualification in which to file the suit, even though that extends beyond the ordinary limitation period.

That opinion was dealing, as the foregoing analysis of it shows, with a case essentially different from the one we have here.

Here we have the question whether a nominated executor, who is also a beneficiary under the will, or the other beneficiaries under the will, can suspend or interrupt the running of a statute, which has already begun to run against their ancestor, by their failure for a long period to cause someone to qualify as personal representative so that the action may be brought within the statutory period.

It has long been the rule in this state that where a statute has begun to run against one in his lifetime his death does not suspend or interrupt the continued running of same in the absence of a statutory provision, and the statute which we have quoted, manifestly, as was pointed out in the Halcomb case, provides for such extension only where the qualification of personal representative was within one year of the expiration of the statutory period, and clearly was never intended to authorize parties, by their own voluntary acts and conduct, to suspend or interrupt the running.

Such statutes are statutes of repose and to hold, as appellant would have us, that parties, by their own conduct, may indefinitely suspend the operation of such a statute, would be to give an interpretation to the section in question wholly out of harmony with the whole policy of our laws.

If a nominated executor or the beneficiaries of a decedent may, by their voluntary conduct, suspend or interrupt the running of a statute against their ancestor or decedent for eleven years, they may do so for a longer period; and it is quite beyond our conception that there was ever any legislative purpose looking to this end. On the contrary, it is our view that the section quoted applies only to the qualifications of personal representatives *before* the statutory period has expired, and has no application to a qualification by a personal representative after the limitation period has expired.

Our conclusion is that the statute never ceased to run after the death of Fix and continued to run notwithstanding his executor did not qualify until after the expiration of the limitation period.

Judgment affirmed.